AB:OG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | C O M P L A I N T |
| - against - | (21 U.S.C. § 846) |
| ADOLFO DELEON and LUIS CABRAL PADILLA, | No. 19-M-1059 |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

A. Edward Tracy, being duly sworn, deposes and states that he is a Special

Agent with the Drug Enforcement Administration, duly appointed according to law and

acting as such.

In or about November 2019, within the Eastern District of New York, the

defendants ADOLFO DELEON and LUIS CABRAL PADILLA did knowingly and

intentionally conspire to possess with intent to distribute a substance containing heroin, a

Schedule I controlled substance.

(Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are

as follows:[1]

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary
to establish probable cause to arrest, I have not described all the relevant facts and
circumstances of which I am aware.

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been involved in the investigation of numerous cases involving narcotics conspiracies.   I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2.      On or about November 6, 2019, at approximately 1:30 p.m., I observed a Confidential Source whose identity is known to the DEA ("CS")[2], meet with the defendant ADOLFO DELEON, in Queens, New York.   The CS later informed me that DELEON offered to sell the CS 2 kilograms of heroin for $55,000 per kilogram and that DELEON would be able to deliver the heroin at approximately 4:00 p.m. later that day.

3.      I was informed by the CS that the defendant DELEON later stated that he could not deliver the heroin until approximately 8:00 p.m. that same day.   Arrangements were then made for the delivery to occur on November 7, 2019 in Queens, New York.

4.      On or about November 7, 2019, at approximately 12:45 p.m., I observed DELEON enter a vehicle parked in Queens, New York.   DELEON was carrying a large McDonald's paper bag.   I observed the CS enter the same vehicle shortly thereafter. Based on a signal from the CS, the CS was able to communicate to me that DELEON was in possession of narcotics when he entered the vehicle.   At approximately 12:50 p.m., members of the Long Island Drug Task Force arrested the defendant DELEON, the CS and another individual that was in the vehicle.   At the time that DELEON was arrested, he was found in

---

[2]      The CS is a paid informant whose information has proved to be reliable in the past.

possession of approximately 1,014 grams of heroin, which was hidden inside the McDonald's bag.

5.      At the time that DELEON was observed entering the vehicle where the CS met him, members of the Long Island Drug Task Force observed a silver 2020 Toyota Corolla parked in the vicinity that was registered to DELEON.   Two individuals were observed inside the vehicle at the time that DELEON met the CS.   The two individuals walked inside of a fast food restaurant while DELEON was inside the vehicle with the CS. The fast food restaurant was in the line of sight of the vehicle in which DELEON was meeting the CS.   One of the individuals was later identified as the defendant LUIS CABRAL PADILLA.

6.      At the time that DELEON was arrested, the CS informed me that DELEON told the CS that the individuals in the Corolla were with DELEON and that they were armed.

7.      The defendant LUIS CABRAL PADILLA was also arrested.   In my training and experience, individuals who sell significant quantities of narcotics often use other individuals as "lookouts" who attempt to observe whether law enforcement is present or otherwise protect the seller and the narcotics trafficking business.

8.      Both DELEON and CABRAL PADILLA were later advised of their Miranda rights, waived them, agreed to speak with law enforcement authorities and allowed the authorities to search their cellular telephones.   On both cellular telephones, law enforcement agents found an audio message from CABRAL PADILLA to DELEON in Spanish that was sent on November 7, 2019.   The message was translated by another agent that is fluent in Spanish.   The message, stated, in sum and substance, that CABRAL

PADILLA could not get the stuff yesterday, that DELEON would have to wait until 8:00

p.m., and that DELEON can tell them not to come because CABRAL PADILLA did not

have "fotos" or anything in his house right now.   In my training and experience, I

understand that "fotos" is a term that is often used to describe narcotics.   Furthermore, from

my prior conversations with the CS, I understand that the reference to waiting until 8:00 p.m.

referred to the narcotics transaction that was supposed to occur on November 6, 2019

between the CS and DELEON.

WHEREFORE, your deponent respectfully requests that the defendants

ADOLFO DELEON and LUIS CABRAL PADILLA be dealt with according to law.

S/ Edward Tracy

A. Edward Tracy
Special Agent, Drug Enforcement Administration

Sworn to before me this
8th day of November, 2019

S/ Roanne Mann

HONORABLE ROANNE L. MANN
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK